Our final case of the day is Anderson v. Bayer. Mr. Anderson. Good afternoon. May it please the court. My name is Victoria Anderson. I'm appearing pro se. I'd like to note that although I am an attorney by profession, I'm not a litigator. And this is actually the first case I've argued since first year moot court some 20 years ago. And so I apologize in advance for any procedural court missteps. Your honors, first, I'd like to concede that the district court did have ancillary jurisdiction under California law to adjudicate the attorney fees issues in my case, because the underlying action was still pending before that court. However, the district court was compelled to apply California law to the facts. And my contention is that the district court failed to do so in three material respects. First, the district court failed to apply California law governing attorney withdrawal. Secondly, in the event, your honors hold that I call them Gerard Gibbs, but it would be Gerard Gibbs, Danko Meredith and Gerard Gibbs group. In the event, your honors hold that they they were discharged. The district court failed to apply the California benchmark cases governing attorney compensation under quantum merit. Those cases being for Kazi v. Brent, Cesares v. Sines, and most importantly, Spires v. American Bus Lines. And by not applying those cases and holdings in those cases, the court awarded fees, almost $30,000 in excess of the upper limit. Thirdly, the district court failed to analyze and apply the express terms of the retainer agreement, particularly with respect to whether an attorney's lien, which can only be established by contract under California law, whether it was actually created, whether that Gerard Gibbs voluntarily waived all rights to attorney's fees under Section C of the retainer agreement. And that withdrawal was effective upon notice under Section I of the retainer agreement. Counsel, did you raise that point before the district court? Because it looked to me like you raised it for the first time in your 60B motion. The withdrawal upon notice, your honor? No, the lien agreements, the provisions of the contract, your reference to the express provisions of the contract. I actually I raised it in the I guess my in the district court level in my reply. I went back to double check and I did see that I raised it. And the other party, Lynn Seifel, which is part of Seifel Law Group, also raised it. I don't believe I'm mistaken, but I did go back to double check, your honor. Okay. With respect to withdrawal under California law, if an attorney withdraws before the occurrence of the contingency fee, the occurrence of the contingency, the attorney waives all rights to collect attorney's fees. Under the contract, it specifically states that Gerard Gibbs could withdraw at any time upon notice. I raised in the at the district court the and that notice was given on May 1st, 2014. I raised a case, Donnelly v. Ayer, a California case, which stands for the proposition that if the retainer agreement only requires notice of termination, then the relationship actually ends as of the date of that notice. Under similarly under Ramirez v. Sturdivant, that court concluded that an attorney may withdraw with the consent of client and court approval is only necessary where the court where the client opposes withdrawal. By deciding that my May 6th email constituted the termination, my contention is that the district court imposed new and different and more onerous requirements. My contention is that the attorney-client relationship ended on the 1st, and by reading the letter that was sent, the notice where it said that I needed to respond immediately to preserve any rights, that plus the notice, the advice that was given by my new attorneys, we believed that if we didn't send something, then I might be in a position of losing my rights. And so I was advised to send something, and so I sent the notice on May 6th. But my contention is that sending a notice after the attorneys have already terminated the relationship can't, doesn't reopen it, re-terminate it. Should someone who terminates a relationship, you say they shouldn't be paid anything? Under California law, Your Honors, if the attorneys withdraw without just cause. Without completing the case or whatever they were doing. For whatever reason, they withdraw. That's the law, Your Honor, and so I believe that's true. And without cause. And without justifiable cause, provided that. But before the district court could adjudicate whether there was cause, you fired that law firm. Would you have a right to do for any reason? Right? So how can one say that this was a withdrawal without cause when you unilaterally prevented the district court from deciding whether there was cause? Well, Your Honor, I would posit that justifiable cause would mean that it would turn on a breach of a duty. The laws in California specifically say that even if there's an acrimonious relationship and the attorney doesn't want to work with the client anymore, that's insufficient to meet the burden of justifiable cause. I would also say that even in the event that you would hold that they did not withdraw, but they were discharged, I would still posit that Gerard-Gibbs doesn't meet its burden. For a discharge under Foucault v. Brent, Gerard-Gibbs is limited to Quantum, Merowith. And there's a Ninth Circuit case, Alvarado v. Federal Express, which I mistakenly cite as Alvarado v. Parker in one of my briefs. It says a discharge attorney is not permitted to enforce the contingent percentage after discharge. However, the client may still enforce the contingent contract in order to limit the current and discharged attorney's fees to the agreed contingent fee. Under the Spires case, if when the aggregate fees requested by all attorneys in the case is insufficient to meet the Quantum Merowith claims of all attorneys, then there has to be a pro rata apportionment. And although the district court reviews and cites, too, and quotes from the Ellard v. Los Angeles County case, it stops sort of just before that case discusses Spires. And the district court did not apply Spires. The aggregate fees requested by all attorneys amounts to roughly $141,000. The actual contingent fee available is around $65,000. And from that, $8,400 needed to be paid into the multi-district litigation fund. Although Gerard-Gibbs said that they paid the entire fee, they actually only paid the 4% attorney's fee, which was required. So that roughly $55,000 under California law has to be apportioned among all attorneys pro rata, according to the time spent on the case in achieving the client's settlement. With respect to Gerard-Gibbs, they negotiated a settlement offer for me in the amount of roughly $147,000. That was actually based on the wrong personal injury. And then I filed an appeal. It was through them, but I'm the one that said, hey, this is the wrong personal injury that you are asking me to settle on. And Gerard-Gibbs' injury determination was overturned. And through that appeal, the settlement administrator awarded me an additional 20%, raising my settlement offer to roughly $176,000. Roughly. I'm out of time, Your Honor. I'm afraid so. Thank you, Ms. Anderson. Thank you. Ms. Zeman. Good afternoon, Your Honors. My name is Amy Zeman, and I am with the law firm Gibbs Law Group. We took over responsibility for this matter after Gerard-Gibbs reorganized into two law firms, so hence the different names. And I also speak on behalf of our co-consult, Danko Meredith. I'm here for a very simple reason, and that is to protect honest pay received for honest work. Each of our firms working on this matter always works hard for our clients. We embrace our obligations as consul, and we take pride in doing that. That's exactly what we did for Ms. Anderson for four years. We were happy with the outcome that we ultimately were able to make available to her. And our work set the floor value for Ms. Anderson's case when she ultimately went on to engage in further negotiations after declining the offer we had obtained for her and later terminating our services. The law allows us to recover the reasonable value of our work once she did recover through the later settlement, and the district court properly awarded us our fees. I appreciate that Ms. Anderson acknowledges that the court did have jurisdiction to make those rulings, and that certainly takes some work off of me for my argument today. I do want to address, of course, a number of things that she mentioned this morning. Regarding the withdrawal versus termination, the district court looked very closely at this issue and was very clear in its holdings and determining that, as Your Honor noted, he was denied the opportunity to adjudicate whether there would be a withdrawal or not. What we did on May 1st was to give Ms. Anderson notice of our intent to seek the court's permission to withdraw. That's what we were required to do under the local rules. We could not just withdraw of our own volition. We required the court's approval. We gave her that notice on May 1st, and as Your Honor noted, the response we received was the termination notice on May 6th. And so the facts of the case do show that the council was terminated, and under California case law, we are entitled to the reasonable value of our services that we had rendered up until that point. Ms. Anderson's comments regarding her opinion that the firm would have lacked cause to withdraw, I think, are just not relevant here because it would have been the district court's position to adjudicate that and make that determination, which it was not able to do because of the termination of our relationship on May 6th by Ms. Anderson. The court did not enforce the contingency fee. What the court did was properly apply the Fracassi case to determine that the firms were entitled to some reasonable value for the work they had done, and then looked at the various factors that are discussed in that case to determine what an appropriate fee might be. Based on its analysis, it determined that the equivalent of 40% of the offer that we had obtained for Ms. Anderson was an appropriate fee. I think it's important to note that under the Fracassi case, the actual starting point would be the load star value of the work done, and looking at that, our load star value was just under $200,000, if I remember correctly, meaning that the actual value of the fees as initially agreed to far exceeded what would have been available under the 40% or even 33% contingency fee agreements, and so it was appropriate for the court to look at alternative methods other than the load star to determine what would be reasonable. I do want to touch on the comments regarding the settlement offer amount, and I think what's happening is just sort of a fundamental misunderstanding of how the settlement process worked. This case was one of amongst 12,000 individual cases in a large MDL. Within that MDL, cases were generally settled through aggregate settlements for small groups of individuals, and then a special master would be involved once an aggregate amount was determined to allocate that amount to the individuals. With the special master, there's always an opportunity that some error might be made, a document might be missed, and so the settlement from the beginning had a built-in process to allow us to go back to the special master where a claimant might have disagreed with the way he allocated that aggregate settlement amount out to the individuals. Ms. Anderson did disagree with one of the medical factors that was taken into consideration. We were able to advocate for her through the process set forward in the settlement, and were able to increase that amount to the slightly higher amount that was the final offer that she ultimately declined. Was the money put someplace? Yes, the money was put into a qualified settlement fund, which was administered by one of Ms. Anderson's counsel who she retained after us, and it's important there to keep in mind that the defendants would not allow distribution from that qualified settlement fund until all liens were resolved, including attorney's fees. In turn, the district court's general practice was to not dismiss cases until there was a disbursement from the qualified settlement fund, meaning this case was sort of stuck in the district court in front of that court's jurisdiction until the fee issues were resolved so that distribution could occur. And that's been done. And that has now occurred. Correct. I think unless the court has any further questions, I have nothing further to add. Thank you very much. Thank you very much. Thank you, Ms. Anderson. The case is taken under advisement.